JS 44C/SDNY
REV. 7/2012

CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| ELSWORTH GEORGE | THE CITY OF NEW YORK, et al., |

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER | ATTORNEYS (IF KNOWN) |
|---|---|
| BARON ASSOCIATES, P. C. , 2509 AVENUE U, BROOKLYN, NY 11229  (718) 934-6501 | |

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

42 U.S.C. 1983, 1985, 1986, 1988, The 4th and 14th Amendments to the Constitution of the United States. (Please See Rider)

Has this or a similar case been previously filed in SDNY at any time? No [X] Yes [ ]   Judge Previously Assigned

If yes, was this case Vol. [ ] Invol. [ ] Dismissed. No [ ] Yes [ ] If yes, give date _____ & Case No. _____

Is THIS AN INTERNATIONAL ARBITRATION CASE?    No [X]    Yes [ ]

(PLACE AN [x] IN ONE BOX ONLY)                NATURE OF SUIT

| TORTS | | | | | ACTIONS UNDER STATUTES |
|---|---|---|---|---|---|

| CONTRACT | PERSONAL INJURY | PERSONAL INJURY | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110  INSURANCE | [ ] 310  AIRPLANE | [ ] 362  PERSONAL INJURY - | [ ] 610  AGRICULTURE | [ ] 422  APPEAL | [ ] 400  STATE |
| [ ] 120  MARINE | [ ] 315  AIRPLANE PRODUCT | MED MALPRACTICE | [ ] 620  OTHER FOOD & | 28 USC 158 | REAPPORTIONMENT |
| [ ] 130  MILLER ACT | LIABILITY | [ ] 365  PERSONAL INJURY | DRUG | [ ] 423  WITHDRAWAL | [ ] 410  ANTITRUST |
| [ ] 140  NEGOTIABLE | [ ] 320  ASSAULT, LIBEL & | PRODUCT LIABILITY | [ ] 626  DRUG RELATED | 28 USC 157 | [ ] 430  BANKS & BANKING |
| INSTRUMENT | SLANDER | [ ] 368  ASBESTOS PERSONAL | SEIZURE OF | | [ ] 450  COMMERCE |
| [ ] 150  RECOVERY OF | [ ] 330  FEDERAL | INJURY PRODUCT | PROPERTY | | [ ] 460  DEPORTATION |
| OVERPAYMENT & | EMPLOYERS' | LIABILITY | 21 USC 881 | PROPERTY RIGHTS | [ ] 470  RACKETEER INFLU- |
| ENFORCEMENT | LIABILITY | | [ ] 630  LIQUOR LAWS | | ENCED & CORRUPT |
| OF JUDGMENT | [ ] 340  MARINE | PERSONAL PROPERTY | [ ] 640  RR & TRUCK | [ ] 820  COPYRIGHTS | ORGANIZATION ACT |
| [ ] 151  MEDICARE ACT | [ ] 345  MARINE PRODUCT | | [ ] 650  AIRLINE REGS | [ ] 830  PATENT | (RICO) |
| [ ] 152  RECOVERY OF | LIABILITY | [ ] 370  OTHER FRAUD | [ ] 660  OCCUPATIONAL | [ ] 840  TRADEMARK | [ ] 480  CONSUMER CREDIT |
| DEFAULTED | [ ] 350  MOTOR VEHICLE | [ ] 371  TRUTH IN LENDING | SAFETY/HEALTH | | [ ] 490  CABLE/SATELLITE TV |
| STUDENT LOANS | [ ] 355  MOTOR VEHICLE | [ ] 380  OTHER PERSONAL | [ ] 690  OTHER | SOCIAL SECURITY | [ ] 810  SELECTIVE SERVICE |
| (EXCL VETERANS) | PRODUCT LIABILITY | PROPERTY DAMAGE | | | [ ] 850  SECURITIES/ |
| [ ] 153  RECOVERY OF | [ ] 360  OTHER PERSONAL | [ ] 385  PROPERTY DAMAGE | LABOR | [ ] 861  HIA (1395ff) | COMMODITIES/ |
| OVERPAYMENT | INJURY | PRODUCT LIABILITY | | [ ] 862  BLACK LUNG (923) | EXCHANGE |
| OF VETERAN'S | | | [ ] 710  FAIR LABOR | [ ] 863  DIWC/DIWW (405(g)) | [ ] 875  CUSTOMER |
| BENEFITS | | | STANDARDS ACT | [ ] 864  SSID TITLE XVI | CHALLENGE |
| [ ] 160  STOCKHOLDERS | | PRISONER PETITIONS | [ ] 720  LABOR/MGMT | [ ] 865  RSI (405(g)) | 12 USC 3410 |
| SUITS | | | RELATIONS | | [ ] 890  OTHER STATUTORY |
| [ ] 190  OTHER | | [ ] 510  MOTIONS TO | [ ] 730  LABOR/MGMT | | ACTIONS |
| CONTRACT | | VACATE SENTENCE | REPORTING & | FEDERAL TAX SUITS | [ ] 891  AGRICULTURAL ACTS |
| [ ] 195  CONTRACT | | 20 USC 2255 | DISCLOSURE ACT | | [ ] 892  ECONOMIC |
| PRODUCT | ACTIONS UNDER STATUTES | [ ] 530  HABEAS CORPUS | [ ] 740  RAILWAY LABOR ACT | [ ] 870  TAXES (U.S. Plaintiff or | STABILIZATION ACT |
| LIABILITY | | [ ] 535  DEATH PENALTY | [ ] 790  OTHER LABOR | Defendant) | [ ] 893  ENVIRONMENTAL |
| [ ] 196  FRANCHISE | CIVIL RIGHTS | [ ] 540  MANDAMUS & OTHER | LITIGATION | [ ] 871  IRS-THIRD PARTY | MATTERS |
| | [ ] 441  VOTING | | [ ] 791  EMPL RET INC | 26 USC 7609 | [ ] 894  ENERGY |
| | [ ] 442  EMPLOYMENT | | SECURITY ACT | | ALLOCATION ACT |
| REAL PROPERTY | [ ] 443  HOUSING/ | | | | [ ] 895  FREEDOM OF |
| | ACCOMMODATIONS | | IMMIGRATION | | INFORMATION ACT |
| [ ] 210  LAND | [ ] 444  WELFARE | PRISONER CIVIL RIGHTS | | | [ ] 900  APPEAL OF FEE |
| CONDEMNATION | [ ] 445  AMERICANS WITH | | [ ] 462  NATURALIZATION | | DETERMINATION |
| [ ] 220  FORECLOSURE | DISABILITIES - | [ ] 550  CIVIL RIGHTS | APPLICATION | | UNDER EQUAL |
| [ ] 230  RENT LEASE & | EMPLOYMENT | [ ] 555  PRISON CONDITION | [ ] 463  HABEAS CORPUS- | | ACCESS TO JUSTICE |
| EJECTMENT | [ ] 446  AMERICANS WITH | | ALIEN DETAINEE | | [ ] 950  CONSTITUTIONALITY |
| [ ] 240  TORTS TO LAND | DISABILITIES -OTHER | | [ ] 485  OTHER IMMIGRATION | | OF STATE STATUTES |
| [ ] 245  TORT PRODUCT | [X] 440  OTHER CIVIL RIGHTS | | ACTIONS | | |
| LIABILITY | (Non-Prisoner) | | | | |
| [ ] 290  ALL OTHER | | | | | |
| REAL PROPERTY | | | | | |

Check if demanded in complaint:

CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $ OTHER

Check YES only if demanded in complaint:
JURY DEMAND: YES [ ] NO [ ]

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.?
IF SO, STATE:

JUDGE _____    DOCKET NUMBER _____

NOTE:  Please submit at the time of filing an explanation of why cases are deemed related.

*(PLACE AN x IN BOX ONLY)*                                    **ORIGIN**

☒ 1 Original        ☐ 2 Removed from      ☐ 3 Remanded      ☐ 4 Reinstated or   ☐ 5 Transferred from  ☐ 6 Multidistrict   ☐ 7 Appeal to District
  Proceeding            State Court              from                 Reopened          (Specify District)     Litigation           Judge from
                    ☐ a. all parties represented    Appellate                                                                     Magistrate Judge
                                               Court                                                                             Judgment
                    ☐ b. At least one
                         party is pro se.

*(PLACE AN x IN BOX ONLY)*              **BASIS OF JURISDICTION**               **IF DIVERSITY, INDICATE**
☐ 1 U.S. PLAINTIFF   ☐ 2 U.S. DEFENDANT   ☒ 3 FEDERAL QUESTION   ☐ 4 DIVERSITY   **CITIZENSHIP BELOW.**
                                             (U.S. NOT A PARTY)                   **(28 USC 1332, 1441)**

**CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)**

(Place an [X] in one box for Plaintiff and one box for Defendant)

|  | PTF | DEF |  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

**PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)**

ELSWORTH GEORGE
53 Rockaway Parkway, Apt. 1F
Brooklyn, New York  11212
KINGS COUNTY

**DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)**

THE CITY OF NEW YORK, 100 Church Street, 4th Floor, New York, New York  10007
THE NEW YORK CITY POLICE DEPARTMENT, 1 Police Plaza, New York, New York  10038
NEW YORK CITY POLICE COMMISIONER RAYMOND KELLY, 1 Police Plaza, New York, New York
10038

**DEFENDANT(S) ADDRESS UNKNOWN**
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE
RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

N/A

Check one:    THIS ACTION SHOULD BE ASSIGNED TO:    ☐ WHITE PLAINS    ☒ MANHATTAN
              (DO NOT check either box if this a PRISONER PETITION/PRISONER CIVIL RIGHTS COMPLAINT.)

DATE 10/16/2012  SIGNATURE OF ATTORNEY OF RECORD          ADMITTED TO PRACTICE IN THIS DISTRICT
                                                          [ ] NO
RECEIPT #                                                 ☒ YES (DATE ADMITTED Mo. 05   Yr. 2003  )
                                                          Attorney Bar Code # KO 8511

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____   **MAG. JUDGE NETBURN**   is so Designated.

Ruby J. Krajick, Clerk of Court by _____ Deputy Clerk, DATED _____

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

| | |
|---|---|
| ELSWORTH GEORGE | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) |
| THE CITY OF NEW YORK, ET AL, | ) |
| (Please see Rider for All Parties) | ) |
| _____ | ) |
| *Defendant* | ) |

## 12 CIV 7779

Civil Action No.

## JUDGE PAULEY

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   THE CITY OF NEW YORK, 100 Church Street, 4th Floor, New York, New York 10007
THE NEW YORK CITY POLICE DEPARTMENT, 1 Police Plaza, New York, New York 10038
NEW YORK CITY POLICE COMMISIONER RAYMOND KELLY, 1 Police Plaza, New York, New York 10038

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> Baron Associates P.C.
> 2509 Avenue U
> Brooklyn, New York 11229

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

RUBY J. KRAJICK

*CLERK OF COURT*

Date: OCT 1 8 2012

_____
*Signature of Clerk or Deputy Clerk*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ELSWORTH GEORGE,

                Plaintiff,

    -against-

THE CITY OF NEW YORK, THE NEW YORK
CITY POLICE DEPARTMENT, NEW YORK
CITY POLICE COMMISIONER RAYMOND
KELLY, NEW YORK CITY POLICE OFFICER
"JOHN DOE" and NEW YORK CITY POLICE
OFFICER "JANE DOE,"

                Defendants.
-------------------------------------------------------------------X

**CIVIL COVER SHEET**

**RIDER**

**CAUSE OF ACTION**

42 U.S.C. §§ 1983, 1985, 1986 and 1988 and the Fourth and Fourteenth Amendments to the Constitution of the United States.

This is a civil action seeking damages against Defendants for committing acts, under color of law, which deprived Plaintiff of rights secured under the Constitution and laws of the United States of America and the State of New York; for conspiring for the purpose of impeding and hindering the due course of justice, with intent to deny Plaintiff of equal protection on the laws; and for refusing or neglecting to prevent such deprivation and denials to Plaintiff.

Admitted:    05-2003
Bar Code #:  KO 8511

Signature of Attorney of Record

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

```
Court Name: District Court
Division: 1
Receipt Number: 465401051310
Cashier ID: Claosley
Transaction Date: 10/18/2012
Payer Name: BARON ASSOCIATES PC
------------------------------------
CIVIL FILING FEE
  For: BARON ASSOCIATES PC
  Amount:        $350.00
------------------------------------
CHECK
  Check/Money Order Num: 65
  Amt Tendered:  $350.00
------------------------------------
Total Due:       $350.00
Total Tendered:  $350.00
Change Amt:      $0.00

12CV7779(WHP)
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 12 CIV 7779

---------------------------------------------------------------X

ELSWORTH GEORGE,



                                        Civil Action
                                        No.:_____

        Plaintiff,

    -against-                            COMPLAINT

                                        Jury Trial Demanded

THE CITY OF NEW YORK, THE NEW YORK
CITY POLICE DEPARTMENT, NEW YORK
CITY POLICE COMMISIONER RAYMOND
KELLY, NEW YORK CITY POLICE OFFICER
"JOHN DOE" and NEW YORK CITY POLICE
OFFICER "JANE DOE,"

                Defendants.
---------------------------------------------------------------X


## NATURE OF THE ACTION

1.      This is a civil action seeking damages against Defendants for committing acts,

under color of law, which deprived Plaintiff of rights secured under the Constitution and laws of

the United States of America and the State of New York; for conspiring for the purpose of

impeding and hindering the due course of justice, with intent to deny Plaintiff of equal protection

on the laws; and for refusing or neglecting to prevent such deprivation and denials to Plaintiff.

2.      Plaintiff ELSWORTH GEORGE's rights were violated when officers of the NEW

YORK CITY POLICE DEPARTMENT ("NYPD") assaulted and falsely pursued Plaintiff as he

was a pedestrian on a Brooklyn sidewalk.

3

3.     Plaintiff's rights were further violated when he was brutally assaulted and unlawfully detained, arrested and held in jail.

## JURISDICTION AND VENUE

4.     This action is brought pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988 and the Fourth and Fourteenth Amendments to the Constitution of the United States.

5.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (4).

6.     An award of costs and attorney's fees is authorized pursuant to 42 U.S.C. § 1988.

7.     Venue is properly laid in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) in that, *inter alia*, the events giving rise to the claim occurred in the Southern District of New York.

## SUPPLEMENTAL JURISDICTION

8.     This Court has supplemental jurisdiction over Plaintiff's claims herein under the Constitution and Laws of the State of New York because they are so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

9.     Pursuant to New York State General Municipal Law § 50-e, Plaintiff timely filed a Notice of Claim with the New York City Comptroller and the NYPD within ninety (90) days of the events herein complained of, and the Comptroller designated the claim as number 2012PI012722.

10.     More than thirty (30) days have elapsed since service of said Notice of Claim and adjustment or payment of the claim has been neglected or refused by Defendant THE CITY OF NEW YORK ("CITY").

4

11.    This action is commenced within one (1) year and ninety (90) days after the happening of the events upon which these claims arise.

12.    Defendant CITY has failed to conduct an examination of the Plaintiff pursuant to New York General Municipal Law § 50-h, thereby waiving any rights from which it may have.

13.    At all times material hereto, Plaintiff has remained ready, willing and able to comply with his requirements pursuant to New York General Municipal Law § 50-h.

## JURY TRIAL DEMAND

14.    Plaintiff demands trial by jury on each and every one of the claims pled herein.

## PARTIES

15.    Plaintiff ELSWORTH GEORGE is a resident of Kings County, New York. At all time herein, Plaintiff was a resident of Brooklyn, New York.

16.    At all time herein, Defendant CITY is a municipal corporation duly organized and existing by virtue of the laws of the State of New York.

17.    At all time herein, Defendant NYPD is the department of the CITY responsible for, among other things, arresting persons for offenses and maintaining custody over such persons prior to their initial appearance in court. At all time relevant hereto, the NYPD, together with CITY, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD personnel. In addition, at all relevant times, the NYPD, together with CITY, was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obeyed the constitutions and laws of the United States and of the State of New York.

5

18.    In addition to the facts alleged in the following paragraphs, the following defendants are all sued in their individual and official capacities and all acted within the scope of their employment and under color of state law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of New York and CITY.

19.    At all relevant times herein, Defendant RAYMOND KELLY ("KELLY") was the commissioner of the NYPD.

20.    The true names of Defendants POLICE OFFICER JOHN DOE ("DOE") and POLICE OFFICER JANE DOE ("DOE") are not currently known to Plaintiff. However, all of said Defendants are employees or agents of the NYPD. Accordingly, said Defendants are entitled to representation in this action by the New York City Law Department ("Law Department") upon their request, pursuant to New York General Obligations Law § 50-k. The Law Department is hereby put on notice (a) that Plaintiff intends to name said officers as defendants in an amended pleading once the true names of said defendants become known to Plaintiff and (b) the Law Department should immediately begin preparing their defense in this action.

## STATEMENT OF FACTS

21.    On May 6, 2012, at approximately 12:08 a.m., Plaintiff was a pedestrian traveling upon the eastern most sidewalk of Rutland Road between East 91st and East 92nd Streets in the City of Brooklyn and State of New York.

22.    At the aforementioned time, the POLICE OFFICER JOHN DOE ("DOE") and POLICE OFFICER JANE DOE ("DOE") were traveling in a marked police vehicle, without the

use of emergency sirens or signals on Rutland Road in the City of Brooklyn and the State of New York.

23.    Without probable cause or provocation, POLICE OFFICER JOHN DOE ("DOE") and POLICE OFFICER JANE DOE ("DOE") exited the police vehicle at which time, Officers "John Doe" and "Jane Doe" using unlawful physical force, assaulted the Plaintiff by striking him repeatedly upon his body.

24.    More specifically, the Plaintiff was grabbed by said officers by the back of his collar, struck in the abdomen by Officer "John Doe's" knee and slammed to the ground.

25.    After the aforementioned incident, the police did not recover any weapons or contraband of any kind on or about the proximity of the Plaintiff.

26.    The Plaintiff was detained for a significant period of time and at all times having his freedom of body movement restricted by said officers.

## THE CRIMINAL PROCEEDINGS AGAINST PLAINTIFF

27.    Next the defendants conspired to shield themselves from liability, embarrassment, and charges of misconduct by wrongfully and falsely accusing plaintiff of disorderly conduct.

28.    To that end, plaintiff was given a charge of disorderly conduct and made to appear on September 20, 2012 in front of Hon. Judge R. Ross in the Criminal Court of the City of New York, County of New York, SAP Part.

29.    On that abovementioned date, the charges against plaintiff were dismissed for defendants' failure to prosecute same.

## PLAINTIFF'S INJURIES AS A RESULT OF THE INCIDENT

30.    As a result of the aforementioned incident, Plaintiff has suffered numerous permanent physical injuries, emotional and psychological damage, and will require medical care and psychological treatment on account of the injuries he sustained, for the foreseeable future.

31.    Said physical injuries include, *inter alia,* left arm, right wrist, left knee, lower back and abdomen.

## CLAIMS FOR RELIEF

## COUNT I  (42 U.S.C. § 1983 – Police Brutality)

32.    Plaintiff repeats and realleges each and every allegation set forth in all preceding paragraphs with the same force and effect as if more fully set forth at length herein.

33.    The Defendants CITY and the NYPD, including but not limited to POLICE OFFICER JOHN DOE ("DOE") and POLICE OFFICER JANE DOE ("DOE") under the color of law and within the course and scope of their authority, assaulted and battered the Plaintiff in violation of the civil rights of the Plaintiff, more particularly, 42 U.S.C. § 1983 as well as other applicable federal and state laws, including the Fourth and Fourteenth Amendments to the United States Constitution.

34.    The deprivation by the Defendants of the Plaintiff's civil rights was the result of POLICE OFFICER JOHN DOE ("DOE") and POLICE OFFICER JANE DOE's ("DOE")

8

actions under the color of law and within his authority as a law enforcement officer within his employ of the Defendant CITY and the NYPD.

35.     The actions of POLICE OFFICER JOHN DOE ("DOE") and POLICE OFFICER JANE DOE ("DOE") worked to deprive Plaintiff of his constitutional rights, including the right to be free from the intentional use of unreasonable force, to be free from unreasonable search and seizure and unreasonable and excessive force.

36.     The Defendants CITY and the NYPD, including but not limited to POLICE OFFICER JOHN DOE ("DOE") and POLICE OFFICER JANE DOE ("DOE") were not acting with immunity when they deprived the Plaintiff of his civil rights.

37.     At no time during the events described above or as the events occurred did POLICE OFFICER JOHN DOE ("DOE") and POLICE OFFICER JANE DOE ("DOE") have probable cause to assault Plaintiff ELSWORTH GEORGE.

38.     At no time, either at the time and place of the incident, prior to the time and place of the incident, or at any later time and place, did Plaintiff attempt or offer violence to any of the Defendants.

39.     The aforementioned incident was done knowingly, intentionally and willfully.

40.     The aforementioned incident was done negligently and recklessly.

41.     The aforementioned incident was done without reason or provocation.

42.     By reason of said incident, Plaintiff was caused to suffer physical injuries, including pain and suffering, emotional and psychological distress and horror.

## COUNT II (42 U.S.C. § 1983 – False Imprisonment)

43.    Plaintiff repeats and realleges each and every allegation set forth in all preceding paragraphs with the same force and effect as if more fully set forth at length herein.

44.    There was no warrant for the arrest of Plaintiff on May 6, 2012.  The arrest of Plaintiff was without reasonable grounds for anyone to believe Plaintiff had committed an offense and each of the Defendants who participated in the arrest and detention process knew they were without probable cause to arrest Plaintiff.

45.    At no time during the events described above or as the events occurred did the Defendants have probable cause for the arrest of the Plaintiff, and there was no legal cause or excuse for his seizure.

46.    Plaintiff was arrested shortly after the incident and remained incarcerated until May 6, 2012 when he was released upon his own recognizance.

47.    As a result of their concerted, unlawful and malicious arrest of Plaintiff, each of the Defendants, acting under color of law and within the scope of their authority, deprived the Plaintiff of his liberty without due process of law and deprived him of equal protection of the laws in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983.

48.    As a result of their concerted, unlawful and malicious detention and confinement of the Plaintiff, each of the Defendants, intentionally, or with deliberate indifference and callous disregard of Plaintiff's rights, deprived the Plaintiff of his liberty without due process of law and deprived him of equal protection of the laws in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983.

10

## COUNT III (42 U.S.C. § 1983 – Monell Claim)

49.     Plaintiff repeats and realleges each and every allegation set forth in all preceding paragraphs with the same force and effect as if more fully set forth at length herein.

50.     All of the acts and omissions by the Defendants, CITY and the NYPD, including but not limited to   POLICE OFFICER JOHN DOE ("DOE") and POLICE OFFICER JANE DOE ("DOE") described above were carried out pursuant to overlapping policies and practices of the CITY which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent and cooperation and under the supervisory authority if the Defendant CITY, its agency the NYPD and Defendant KELLY.

51.     Defendant CITY and the NYPD, by Defendant KELLY and their other policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual police Defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

52.     The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the CITY and the NYPD, all under supervision of ranking officers of the NYPD including Defendant KELLY.

53.     The aforementioned customs, practices, procedures and rules of the CITY and the NYPD include, but are not limited to, the following unconstitutional practices:

      a.  Fabricating and/or suppressing evidence in order to justify (or attempt to justify) otherwise suspiciousness arrest;

11

b. Failing to supervise, train, instruct and discipline police officers and encouraging their misconduct;

c. Discouraging police officers from reporting the corrupt or unlawful acts of other police officers;

d. Retaliating against and/or intimidating officers who report police misconduct; and

e. Failing to intervene to prevent the above-mentioned practices when they reasonably could have been prevented by a supervisor or other agent or employee of the NYPD.

54.    The existence of the aforesaid unconstitutional  customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following civil rights actions filed against city:

a. *Schoolcraft v. City of New York*, 10-CV-6005 (RWS) (S.D.N.Y.) (police officer who exposed a precinct's policies and practices of illegal quotas for the issuance of summonses and arrests, falsifying evidence and suborning perjury alleges he was arrested and committed to psychiatric facility in retaliation for exposing said policies and practices to the press);

b. *Taylor-Mickens v. City of New York*, 09-CV-7923 (RWS) (S.D.N.Y.) (police officers at 24th precinct issue four summonses to a woman in retaliation for her lodging a complaint with the Civilian Complaint Review Board at the precinct);

c. *Colon v. City of New York*, 09-CV-0008 (E.D.N.Y.) In an Order dated November 25, 2009, which denied the CITY's motion to dismiss on *Iqbal/Twombly* grounds, wherein the police officers at issue were fired and prosecuted for falsifying

evidence in a purported buy-and-bust operation, the Honorable District Court

Judge Weinstein wrote:

> Informal inquiry by the court and among judges of this
> court, as well as knowledge of cases in other federal and
> state courts, has revealed anecdotal evidence of repeated,
> widespread falsification by arresting police officers of the
> New York City Police department.    Despite numerous
> inquiries by commissions and strong reported efforts by the
> present administration – through selection of candidates for
> the police force stressing academic and other qualifications,
> serious training to avoid constitutional violations, and
> strong disciplinary action within the department – there is
> some  evidence  of  an  attitude  among  officers  that  is
> sufficiently widespread to constitute a custom or policy by
> the city approving illegal conduct of the kind now charged.

d.   *Callaghan v. City of new York*, 07-CV-9611 (PKC) (S.D.N.Y.) (officers accused

of falsifying evidence and retaliatory arrests of bicyclists engaged in expressive

conduct, to wit, riding in a Critical Mass bicycle rides after the 2004 Republican

National Convention);[1]

e.   *Williams v. City of New York*, 06-CV-6601 (NGG), 2009 U.S. Dist. LEXIS 94418

(E.D.N.Y.) (officers arrest plaintiff during "vertical patrol" of a public housing

project despite evidence that he had a legitimate reason to be on the premises);

f.   *Dunlop v. City of New York*, 06-CV-0433 (RJS), 2008 U.S. Dist. LEXIS 83207

(S.D.N.Y.) (bystander arrested outside the 2004 republican national Convention

while observing arrests occurring in public; alleges that police destroyed

exculpatory evidence by deleting portions of video which contradict sworn

criminal complaint);

---

[1] For a description of this case and the nearly $1 million settlement, see, Cate

13

g. *Carmody v. City of New York*, 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 83207 (S.D.N.Y.) (police officer alleges that he was terminated for cooperating with another officer's claims of hostile work environment);

h. *MacNamara v. City of New York*, 04-CV-9216 (RJS) (JCF) (S.D.N.Y.) (evidence of perjured sworn statements systematically provided by officers to attempt to cover-up or justify unlawful mass arrests of approximately 1800 people has been and continues to be developed in the consolidated litigation arising out of the 2004 Republican National Convention);

i. *McMillan v. City of New York*, 04-CV03990 (FB) (RML) (E.D.N.Y.) (officers fabricated evidence and used excessive force against an African-American man in Kings County and initiated drug charges against him, despite absence of any quantum of suspicion);

j. *Avent v. City of New York*, 04-CV-2451 (CBA) (CLP) (E.D.N.Y.) (same);

k. *Smith v. City of New York*, 04-CV-1045 (RRM) (JMA) (E.D.N.Y.) (same);

l. *Powers v. City of New York*, 04-CV-2246 (NGG), 2007 U.S. Dist. LEXIS 27704 (E.D.N.Y.) (police officers alleges unlawful retaliation by other police officers after testifying about corruption within the NYPD);

m. *Nonnemann v. City of New York*, 02-CV010131 (JSR) AJP), 2004 U.S. LEXIS 8966 (S.D.N.Y.) (former NYPD lieutenant alleging retaliatory demotion and early retirement after reporting a fellow officer to IAB and CCRB for the officer's suspicionless, racially-motivated stop-and-frisk of a group of Hispanic youth);

Doty, *Bike Riders in New York Win Settlement*, N.Y. Times, October 18, 2010.

n. *Richardson v. City of New York*, 02-CV-3651 (JG) (CLP) (E.D.N.Y.) (officers fabricated evidence, including knowingly false sworn complaints, and used excessive force against an African-American man in Kings County and initiated drug charges against him, despite an absence of any quantum of suspicion);

o. *Barry v. New York City Police Department*, 01-CV-10627 *2 (CMB), 2004 (U.S. LEXIS 5951 (S.D.N.Y.) (triable issue of fact where NYPD dergeant alleged retaliatory demotion and disciplinary charges in response to sergeant's allegations of corruption within her unit and alleged that the NYPD had an "unwritten but pervasive custom of punishing officers who speak out about police misconduct and encouraging, if not facilitating, silence among officers");

p. *Walton v. Safir*, 99 –CV-4430 (AKH), 122 F.Supp.2d 466 (S.D.N.Y. 2000) (factual findings after trial that a 12-year veteran of NYPD was terminated in retaliation for criticizing the racially-motivated policies of the NYPD's Street Crime Unit and for alleging that such policies led to the NYPD shooting death of Amadou Diallo);

q. *White- Ruiz v. City of New York*, 93-CV-7233 (DLC) (MHD), 983 F.Supp. 365, 380 (S.D.N.Y. 1997) (holding that the NYPD had an "unwritten policy or practice of encouraging or at least tolerating a pattern of harassment directed at officers who exposed instances of police corruption");

r. *Ariza v. City of New York*, 93_CV_5287 (CPS), 1996 U.S. Dist. LEXIS 20250 at *14 (E.D.N.Y.) (police officer alleges retaliatory duty assignments and harassment in response to his allegations about racially-discriminatory workplace; on motion

for summary judgment, the Court held that the police officer had established proof of both a widespread usage of a policy to retaliate against police officers who expose police misconduct and a failure to train in the police department); and

s.  *Sorlucco v. New York City Police Department*, 89-CV-7225 (CCH), 88 F.2d 4 (2d Cir. 1989) (former officer entitled to trial on issue of whether she was re-assigned and then terminated after reporting a fellow officer had raped her).

t.  *Angel Alvarez v. City of New York*, 11-CV-5464 (S.D.N.Y.) (police officers involved in the negligent shooting and false imprisonment of Angel Alvarez, suppressed evidence which proved the innocence of Mr. Alvarez causing him to be confined to prison for a period in excess of 200 days. While incarcerated, said police officers falsely testified and obtained search warrants for Mr. Alvarez's family home, conducted said search of the home, seized cash from the home and refused to release said cash despite letters from prosecutors advising the police officers to do so. Police officials, despite being in possession of evidence proving Mr. Alvarez's innocence, perpetuated the false testimony of the police officers by releasing fraudulent statements to the media with respect to the events of the evening of the shooting.)

u.  *Andre Raphael v. City of New York, et al.,* 11-CIV-7083 (S.D.N.Y.) (Police officers drove up to plaintiff has he was walking home from a friend's house. The vehicle in which the officers were traveling was not in use of its overhead lights or sirens. While stopped at the traffic signal, the officers abruptly made a left hand turn in the wrong direction of the one way street and as the police vehicle came

upon the claimant one police officer fired a weapon from within the vehicle striking the claimant in the front right thigh.  At the time of the incident the plaintiff was unarmed. Claimant was taken via ambulance to the ER where he was detained and arrested by police.  Police never advised the claimant of the charges being brought against him or read him his Miranda Rights.)

v. *Castilla v. City of New York*,  2011 WL 4345934 S.D.N.Y.,2011. (police officers had a warrant and entered plaintiff's apartment where she was with her boyfriend.  Officers separated the two, and brought her into a room, strip searched her and threatened her with loss of her children.  She was then taken in a police car for a long drive through queens, all the time being threatened with loss of custody of her children.  None of the officers  explained why they had a warrant or what they wanted.  No contraband was found at the apartment.  When they arrived at the police station, she was brought into an interrogation room where an officer made sexual inuendos towards her.  She was then led to a bathroom where while one officer stood guard at the doorway, the other stripped her and sodomized her.  She was continuously threatened with loss of custody of her children and was harassed by this same officer even after she was released.)

w. *Ambrose v. City of New York*, 623 F.Supp.2d 454, S.D.N.Y.,2009. ( plaintiff was present at a club where a shootout occurred between two rival factions.  There were several witnesses that were interviewed. Plaintiff was brought in and placed in a lineup.  He had a broken left arm which was casted.  None of the witnesses identified a gunman with a broken arm.  He was placed in a lineup with 5 other

men that did not look like him in any way. All men were placed sideways in the lineup and had baggy jackets draped on them to hide their arms and to make sure plaintiff's broken arm was unseen. Two witnesses could not identify plaintiff, two said they did see him at the club and one said he knew who one of the shooters was, and that plaintiff did not look like him. This last witness was then taken out of the room and spoken to for 20 minutes. When he came back into the room he identified plaintiff as the shooter.)

x. *Deskovic v. City of Peekskill*, --- F.Supp.2d ----, 2012 WL 4435316, S.D.N.Y.,2012. (plaintiff was singled out as a person of interest in the rape and murder of a 15 year old classmate of his due to his extreme distress at her death. He was brought in for an 8 hour polygraph exam where he was repeatedly verbally attacked by the person conducting the polygraph via the "Arther Method" a notoriously unreliable method of polygraph, and repeatedly accused of murdering his classmate. He was then told by police officers that they knew he was guilty and that he should just confess. He was then interrogated for two more hours until plaintiff falsely confessed while he was crying and in the fetal position on the floor of the interrogation room.)

y. *Weaver v. Brenner*, 40 F.3d 527, 536 (2d Cir.1994) (police officers coerced incriminating statements from plaintiff while he was in police custody and a police officer testified to the statements taken from him while he was being forced to confess.)

18

z. *Davidson v. Strack,* 1986 WL 2813, S.D.N.Y.,1986. (Police coerced incriminatory statements from the accused. The Court determined that the right against self-incrimination is violated by "use of the compelled statements against the maker in a criminal proceeding)

55. The existence of the aforesaid unconstitutional customs and practices, specifically with regard to the failure to supervise, train, instruct and discipline police officers and encouraging their misconduct, are further evidenced, inter alia, by the following:

a. The Report of the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department ("Mollen Commission Report"), dated 7, 1994, states:

> In the face of this problem [of corruption], the [NYPD] allowed its system for fighting corruption virtually to collapse. It has become more concerned about the bad publicity that corruption disclosures generate than the devastating consequences of corruption itself. As a result, its corruption control minimized, ignored and at times concealed corruption rather than root it out. Such an institutional reluctance to uncover corruption is not surprising. No institution wants its reputations tainted — especially a Department that needs the public's confidence and partnership to be effective. A weak and poorly resourced anti-corruption apparatus minimizes the likelihood of such taint, embarrassment and potential harm to careers. Thus there is a strong institutional incentive to allow corruption efforts to fray and lose priority — which is exactly what the Commission uncovered. This reluctance manifested itself in every component of the department's corruption controls from command accountability and supervision, to investigations, police culture, training and recruitment. For at least the past decade, the system designed to protect the Department from corruption

minimized the likelihood of uncovering it.[2]

b. Accordingly, in 1990, the Office of the Special Prosecutor, which investigated charges of police corruption, was abolished.

c. In response to the Honorable Judge Weinstein's ruling of November 25, 2009, in Colon v. City of New York, Infra., in which he noted a "widespread […] custom or policy by the city approving illegal conduct" such as lying under oath and false swearing, Commissioner KELLY acknowledged, "When it happens, it's not for personal gain. It's more for convenience."[3]

d. Defendant CITY's tacit condoning of and failure to supervise, discipline or provide remedial training when officers engage in excessive force is evidenced by its systematic disregard of the recommendations of the Civilian Complaint Review Board. CCRB is a CITY agency, allegedly independent of the NYPD, that is responsible for investigating and issuing findings on complaints of police abuse and misconduct.[4] When it does, however, Police Commissioner KELLY controls whether the NYPD pursues the matter and he alone has authority to impose discipline and the subject officer(s). Since 2005, during KELLY's tenure, only one-quarter of officers whom the CCRB found engaged in misconduct

---

[2] Mollen Commission Report, pp. 2-3.
[3] Oren Yaniv and John Marzulli, *Kelly Shrugs Off Judge Who Slammed Cops*, New York Daily News, December 2, 2009.
[4] In 2006, out of more than 10,000 allegations that were fully investigated, the CCRB substantiated only 594 (about 6%). In 2007, out of more than 11,000 allegations that were fully investigated, the CCRB substantiated only 507 (about 5%). See, CCRB Jan.-Dec. 2007 Status Report at p. 19, available at http://www.nyc.gov/html/ccrb/pdf/ccrbann2007_A.pdf. Upon information and belief, the low rate of substantiated complaints is due in part to the above noted de facto policy and/or well-settled and widespread custom and practice in the NYPD whereby officers refuse to report other officers' misconduct or tell false and/or incomplete stories, inter alia, in sworn testimony and statements given to the CCRB, to cover-up civil rights violations perpetrated by themselves or fellow

received punishment more severe that verbal "instructions." Moreover, the number of CCRB substantiated cases that the NYPD has simpy dropped (i.e., closed without action or discipline) has spiked from less than 4% each year between 2002 to 2006, to 35% in 2007, and approximately 30% in 2008. Alarmingly, the NYPD has refused to prosecute 40% of the cases sent to it by the CCRB in 2009.[5]   As a result, the percentage of cases where the CCRB found misconduct but where the subject officers were given only verbal instructions or the matter was simply dropped by the NYPD rose to 66% in 2007. Substantiated complaints of excessive force against civilians account for more that 10% of the cases that the NYPD dropped in 2007 and account for more than 25% of cases dropped in 2008.[6]

e.   Keiran Creighton, commander of the NYPD Housing Police Service Area 8 in the northern Bronx, was investigated for ordering officers to make a certain number of arrests each month and for pushing officers to falsify documents. According to The York Daily News:

> The incident allegedly occurred in the spring when Creighton ordered at least eight members of an undercover anti-crime team to a meeting in Pelham Bay Park to berate them about an alleged lack of arrests, sources said.
>
> "You can't make nine collars a month, then we'll all have to go our separate ways," Creighton told the officers, according to an internal complaint obtained by The News.

---

officers, supervisors and/or subordinates.
[5] Christine Hauser, *Few Results for Reports of Police Misconduct*, New York Times, October 5, 2009, at A19.
[6] Daily News, *Editorial: City Leaders Must Get Serious About Policing the Police*, August 20, 2008.

Anything less than nine arrests would be a "personal slap in the face," Creighton allegedly said.

Creighton then told the cops to "finagle" the times of arrests so any overtime was paid for by a federally funded anti-drug program, the complaint alleges.

Unbeknownst to Creighton, one officer had his NYPD radio switched on – so the captain's 10 to 12 minute speech was broadcast to Bronx precincts in Morrisania and Scuylerville and taped by a 911 dispatcher.[7]

f.   In the trial of Carolyn Bryant v. New York City, the panel of jurors ruled that the police had a policy [quota] "regarding the number of arrests officers were to make" and that said policy "violated plaintiff's constitutional rights and contributed to her arrest." Jurors had said that they were swayed by the testimony of Captain Alex Perez of the 81st Precinct, who testified that arrest numbers are a factor in assessing police officers.[8]

g.   In the 2011 NYPD ticket fixing scandal, a minimum of 17 police officers – many union delegates - were indicted (more indictments still pending) on charges ranging from perjury, bribery, grand larceny and obstruction. These indictments stem from wiretap recordings of hundreds of NYPD police officers discussing the procedures on how to fix tickets. In addition to these conversations, it is reported that the recordings are rife with overtly racist and inflammatory remarks.[9]

---

[7] Allison Gendar, *NYPD Captain Allegedly Caught In Arrest Quota Fixing*, The New York Daily News, November 14, 2007.
[8] Oren Yaniv, *Court Rules That Cops Do Use Quotas: Woman Injured In 2006 Arrest Settles for $75,000*, The New York Daily News, February 19, 2011.
[9] Kevin Deutsch, *Ticket Fixing Scandal: NYPD Cops' Racist Talk Caught On Wiretap Recordings*, The New York Daily News, September 26, 2011.

56.     The existence of the aforesaid unconstitutional customs and practices, specifically with regard to the practice or custom of officers lying under oath, falsely swearing out criminal complaints, or otherwise falsifying or fabricating evidence, are further evidenced, inter alia, by the following:

a.   The Mollen Commission concluded that police perjury and falsification of official records is probably the most common form of police corruption facing the criminal justice system.  It concluded:

> Regardless of the motives behind police falsifications, what is particularly troublesome about this practice is that it is widely tolerated by corrupt and honest officers alike, as well as their supervisors.  Corrupt and hones officer told us that their supervisors knew or should have known about falsified versions of searchers and arrests and never question them.[10]
>
> [...]
>
> What breeds this tolerance is a deep-rooted perception among man officers of all ranks within the Department that nothing is really wrong with compromising facts to fight crime in the real world.  Simply put, despite the devastating consequences of police falsifications, there is a persistent belief among many officers that it is necessary and justifies, even if unlawful.  As one dedicate officer put in, police officer often view falsification as, to use his words, "doing God's work" – doing whatever it takes to get a suspect criminal off the streets.  This attitude is so entrenched, especially in high-crime precincts, that when investigators confronted one recently arrested officer with evidence of perjury, he asked in disbelief, "What's wrong with that? They're guilty."[11]

---

[10] Mollen Commission Report, p. 36.
[11] Mollen Commission Report, pp. 40-41.

b.  In late 2009, a former NYPD officer in the Bronx, Pedro Corniel, was charged

with perjury for claiming to have caught a burglar "red-handed," when, in fact,

two other officers had made the arrest and handed the arrest off to Mr. Corniel.

The suspect was released.[12] Moreover,

> Prosecutors and NYPD Internal Affairs probers have
> identified as many as two dozen cases in the past year in
> which cops allegedly made false statements involving
> routine arrests when the truth would have served them just
> as well.
>
> That's a significant increase over previous years, sources
> said. "In the past, we'd find this happening once or twice a
> year, and now there are a bunch of them," said one law-
> enforcement official.
>
> What has the authorities particularly troubled is that
> officers historically have lied to cover up more serious
> corruption, such as the cadre of Brooklyn narcotics cops
> caught last year stealing drugs from dealers and masking
> their thievery by filing false report about what they had
> seized.
>
> But internal probers are not finding that officers appeared
> willing to take insidious shortcuts and lie on arrest report
> when they are processing even routine collars, such as
> grand larceny, burglaries and robberies, sources told The
> Post.
>
> Their reasons could range from trying to cut down on
> paperwork to being lazy when filing out arrest and incident
> reports.[13]

c.  In 2007, former NYPD Officer Dennis Kim admitted to accepting money and

sexual favors from the proprietor of a brothel in Queens County in exchange for

protecting that brothel. Mr. Kim was convicted of criminal charges in connection

---

[12] Murray Weiss, *NYPD in a Liar Storm*, New York Post, October 26, 2009.

with those offenses. The 109th Precinct of the NYPD, which used to be Mr.

Kim's command, is also under investigation by the United States Attorney's

Officer for "plant[ing] drugs on suspects and steal[ing] cash during gambling

raids." The 109th Precinct is believed to involved in a practice known as "flaking"

wherein police officers plant drugs on suspects in order to bring legitimacy to an

arrest. According to Assistant United States Attorney Monica Ryan, members of

the 109th Precinct "maintained a small stash of drugs in an Altoids tin for this

purpose."[14]

    d.  In December of 2009, two (2) officers from the 81st Precinct in Brooklyn arrested

and falsely swore our charges against an undercover officer from the Internal

Affairs Bureau. As explained in an article in the New York Post:

> The officer were snared in a sting by internal Affairs in
> December when they were told to keep an eye out for
> people selling untaxed cigarettes in their precinct
>
> Sometime later, they saw a man hanging out on a corner in
> the neighbor and found that he was carrying packs of knock
> –off smokes.
>
> [Sgt. Raymond] Stukes, 45, and [Officer Hector] Tirado,
> 30, cuffed him, but then claimed that they had seen him
> selling the bogus butt to two people, according to sources.
>
> Little did the hapless cops know that the man in their
> custody was as undercover corruption investigator and that
> the whole incident was caught on video.
>
> To complete the ruse, the undercover cop was processed at
> the station house so as to not tip off Stukes and Tirado
> about the sting…

---

[13] *Id.*
[14] John Marzulli, *Claims of Corruption at Queens Precinct Put Crooked Cop's Sentencing on Hold,* New York Daily News, June 20, 2008.

> [P]olice sources said [this action] stem[s] from precinct commanders caving to the pressure of top brass to make themselves look better.
>
> "There's pressure on the cops from the bosses and they're getting pressured form headquarters," a police source told The Post.[15]

The officers were indicted for felony perjury, filing a false report and filling a false instrument.[16]

e. In early 2010, the City settled a civil rights lawsuit wherein one Officer Sean Spencer[17] falsely arrested and accused a 41-year old grandmother of prostitution, promising to pay the woman $35,000. In court documents, Caroline Chen, the attorney representing the CITY in the case, admitted: "Officer Spencer falsely reported to the assistant District Attorney that he saw [the plaintiff] beckon the three male passerby and that he was aware the plaintiff was previously arrested for [prostitution] when the plaintiff had never been arrested for this offense." According to the attorney for the Patrolmen's Benevolent Association, disciplinary charges against the officer are pending.[18]

f. Separate grand jury investigations into drug-related police corruption in the Bronx and Manhattan revealed that more than a dozen officers had been breaking into drug dealers' apartments, stealing and then selling their drugs and perjuring

---

[15] Larry Celona and Tim Perone, *Cops Sting Cops,* N.Y. Post, July 30, 2010.
[16] John Marzulli, *Brooklyn Cops Charged With Barding Into Sting Operation, Arresting A Fellow Officer On Bogus Charges,* N.Y. Daily News, July 30, 2010.
[17] In sum, the CITY has paid out $80,000 to settle four(4) federal lawsuits against Officer Sean Spencer. John Marzulli, *City Shells Out $35G To Grandmother,* Monica Gonzalez, *Busted As Hooker,* New York Daily News, January 7, 2010.
[18] *Id.*

themselves by filing false arrest reports. District attorneys and their assistants interviewed during a four month investigation by New York Newsday said they believe those two grand jury investigations - in the 46th Precinct in the University Heights section of the Bronx and the 34th Precinct - are not isolated instances. They say the investigations reflect a larger, broader problem within the NYPD that its top officials seem unable or unwilling to acknowledge.[19]

57.    The existence of the aforesaid unconstitutional customs and practices, specifically with regard to the practice or custom of discouraging police officers from reporting the corrupt or unlawful practices of other police officers and of retaliating against officers who report misconduct, are further evidence, inter alia, by the following:

a.    Former New York County District Attorney Robert Morgenthau has been quoted as acknowledging that, in the NYPD, there is a "code of silence," or a "code of protection" that exists among officers and that it is followed carefully;

b.    In 1985, former NYPD Commissioner Benjamin Ward, testifying before State Senate Committee, acknowledged the existence of the "code of silence" in the NYPD;

c.    Former NYPD Commissioner Robert Daly wrote in 1991 that the "blue wall of solidarity with its macho mores and prejudices, its cover-ups and silence, is reinforced every day in every way."

58.    The existence of the above-described unlawful de facto policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by

---

[19] David Kocieniewski and Leonard Levitt, *When the Finest Go Bad: DAs, Others Say*

27

supervisory and policy-making officers and officials of the NYPD and the CITY, including, without limitation, KELLY.

59.    The aforementioned actions of the Defendants and of each individual police officer involved resulted from and were taken pursuant to the above-mentioned de facto policies and/or well-settled and widespread customs and practices of the CITY, which are implemented by members of the NYPD, of engaging in systematic and ubiquitous perjury, both oral and written, to cover up federal law violations committed against civilians by either themselves of their fellow officers, supervisors and/or subordinates.  They do so with the knowledge and approval of their supervisors, commanders and KELLY, who all: (i) tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, inter alia, in sworn testimony, official reports, in statements to the CCRB and the Internal Affairs Bureau ("IAB"), and in public statements designed to cover for and/or falsely exonerate accused police officers; and (ii) encourage and, in the absence of video evidence blatantly exposing the officers' perjury, fail to discipline officers for "testilying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover-up civil rights violations perpetrated by themselves or fellow officers, supervisors and/or subordinates against those civilians.

60.    All of the foregoing acts by Defendants deprived Plaintiff of federally protected rights, including, but not limited to, the right:

      a.    Freedom from unreasonable searches and seizures of his person;

      b.    Freedom from arrest without probable cause;

*Department Overlooks Corruption*, New York Newsday, November 18, 1991, at 6.

28

    c.  Freedom from false imprisonment, meaning wrongful detention without good faith, reasonable suspicion or legal justification, and of which Plaintiff was aware and did not consent;

    d.  Freedom from deprivation of liberty without due process of law; and

    e.  The enjoyment of equal protection, privilege and immunities under the law.

61.    Defendant CITY knew or should have known that the acts alleged herein would deprive plaintiff of his rights, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

62.    Defendant CITY is directly liable and responsible for the acts of the individual Defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulation of the CITY and NYPD, and to require compliance with the Constitution and laws of the United States.

63.    Despite knowledge of such unlawful de facto policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and City, including KELLY, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such policies, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the CITY of New York.

64.    The aforementioned CITY policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers encouraging their misconduct are evidenced by the police misconduct detailed herein.  Specifically, pursuant to the aforementioned CITY policies, practices and/or customs, the individual Defendants felt empowered to exercise unreasonable and wholly unprovoked force against Plaintiff, arrest Plaintiff without probable cause.  Pursuant to the aforementioned CITY policies, practices and/or customs, the Defendants failed to intervene in or report other Defendants' violations of Plaintiff's rights.

65.    Plaintiff's injuries were a direct and proximate result of the Defendant CITY and NYPD's wrongful de facto policies and/or well-settled and widespread customs and practices and of knowing and repeated failure of the Defendant CITY and the NYPD to properly supervise, train and discipline police officers.

66.    The actions of the individual Defendants resulted from and were taken pursuant to the foregoing de facto policies and/or well-settled and widespread customs and practices of the City, which implemented by agents or employees of the NYPD, of employing wholly unprovoked and excessive force.

67.    Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and were directly responsible for the violation of the Plaintiff's constitutional rights.

68.    As a direct and proximate cause of the acts of all Defendants as set forth above, Plaintiff suffered physical injury, loss of income, medical expenses, and severe mental anguish in connection with the deprivation of the constitutional and statutory rights guaranteed by the Fifth

and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. § 1983.

## COUNT IV (42 U.S.C. §§ 1983, 1986 – Failure to Intervene)

69.     Plaintiff repeats and re-alleges each and every allegation set forth in all preceding paragraphs with the same force and effect as if more fully set forth at length herein.

70.     Each of the Defendants had knowledge of the conspiracy to arrest and wrongfully deprive Plaintiff of his constitutional and statutory rights as set forth above.

71.     Each of the defendants, through the exercise of reasonable diligence, had the power to prevent or aid in preventing such deprivation.

72.     Each of the Defendants neglected or refused to prevent such deprivation.

73.     As a direct and proximate cause of the acts of all Defendants as set forth above, Plaintiff suffered physical injury, loss of income, medical expenses, and severe mental anguish in connection with the deprivation of the constitutional and statutory rights guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. § 1983.

## COUNT V (42 U.S.C. §§ 1983, 1985 – Conspiracy to Interfere with Civil Rights)

74.     Plaintiff repeats and re-alleges each and every allegation set forth in all preceding paragraphs with the same force and effect as if more fully set forth at length herein.

75.     Each of the defendants conspired for the purpose of depriving Plaintiff the equal protections of the law.

76.     Each of the Defendants took an act in furtherance of the object of said conspiracy.

32

77.    As a direct and proximate cause of the acts of all Defendants as set forth above, Plaintiff suffered physical injury, loss of income, medical expenses, and severe mental anguish in connection with the deprivation of the constitutional and statutory rights guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. § 1983.

## COUNT VI (New York Constitution - Article I)

78.    Plaintiff repeats and re-alleges each and every allegation set forth in all preceding paragraphs with the same force and effect as if more fully set forth at length herein.

79.    By the aforesaid acts, Defendants have violated Plaintiff's right to equal protection laws under Article I, 11 of the New York State Constitution, thereby giving rise to a cause of action pursuant to that article.

80.    The conduct and actions of each of the Defendants, acting under color of law, in assaulting, battering, falsely arresting, imprisoning, and using excessive force against Plaintiff, were done intentionally, maliciously and/or with reckless disregard for the natural and probable consequences of their acts, without lawful justification, and were designed to and did cause specific and serious bodily injury, mental and emotional harm, and pain and suffering in violation of the Plaintiff's constitutional rights as guaranteed under the laws and Constitution of the State of New York. As a result of said actions, Plaintiff was deprived of such rights, including, but not limited to, rights under Article I, 8-9 of the New York State Constitution guaranteeing freedom of expression and association, Article I, 12, guaranteeing protection against unlawful seizure of his person, Article I, 11, guaranteeing due process and equal protection under the law, and Article I, 15 guaranteeing protection from cruel and unusual punishment.

33

81.    As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and otherwise damaged and injured.

## COUNT VIII (Assault and Battery)

82.    Plaintiff repeats and re-alleges each and every allegation set forth in all preceding paragraphs with the same force and effect as if more fully set forth at length herein.

83.    By the actions described above, the individual Defendants did inflict assault and battery upon Plaintiff.  The acts and conduct of these Defendants were the direct and proximate cause of injury and damage to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

84.    As a result of the forgoing, Plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and otherwise damaged and injured.

85.    For all claims under New York State Law, Defendants are jointly and severally liable to Plaintiff inasmuch as this action arises out of the exceptions set forth in 1602 subdivision 5, 7 and 11 of the Civil Practice Law and Rules.

## COUNT VIII (False Arrest and Imprisonment)

86.    Plaintiff repeats and realleges each and every allegation set forth in all preceding paragraphs with the same force and effect as if more fully set forth at length herein.

87.    By the actions described above, each of the Defendants caused to be falsely arrested or falsely arrested Plaintiff, without reasonable or probable cause, illegally and without a

warrant, and without any right or authority to do so. The acts and conduct of the Defendants were the direct and proximate cause of injury and damage to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

88.     The false arrest and confinement of the Plaintiff occurred after he was shot and sustained serious permanent personal injuries along with humiliation, shame, indignity, damage to reputation and credit and suffered emotional and physical distress and injuries.

89.     As a result of the forgoing, Plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and otherwise damaged and injured.

## COUNT IX (Negligence)

90.     Plaintiff repeats and realleges each and every allegation set forth in all preceding paragraphs with the same force and effect as if more fully set forth at length herein.

91.     Each of the Defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the Plaintiff. The acts and conduct of the Defendants were the direct and proximate cause of the injury and damage to the Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

92.     As a result of the forgoing, Plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and otherwise damaged and injured.

35

## COUNT X (Negligent Hiring and Retention)

93.     Plaintiff repeats and realleges each and every allegation set forth in all preceding
paragraphs with the same force and effect as if more fully set forth at length herein.

94.     The Defendants CITY and NYPD did not exercise reasonable care and diligence
in the selection, engagement, employment and training of its agents, servants, and employees and
were negligent in hiring, training and retention of the individual Defendants, so as to cause
serious physical injury to plaintiff.

95.     Such negligence consisted of negligence in training, hiring, supervision and
retention of the individual Defendants involved in this incident; in failing to observe the existing
police department protocols for police officers/detectives designed to govern the use of deadly
lethal force causing the serious injuries both physical and emotional resulting in serious and
permanent physical injury and discrimination arising and resulting out of the aforementioned
wrongful shooting of the plaintiff and further, deprived Plaintiff's civil rights, privileges and
immunities secured under the Constitutions of the United States of America and the State of New
York; in failing to use care in the performance of police duties as reasonably prudent and careful
police officers would have used in similar circumstances; in hiring and retaining persons who
were unfit to serve as police officers/detectives; failing to properly investigate their background;
failing to properly train and instruct police officers/detectives, especially regarding the abuse of
power while in the field; failing to give police officers/detectives proper instructions on the use
of force, use of firearms including proper discharge of said weapons; failing to give police
officers/detectives training as to the use of firearms in public; improperly supervising police

officers/detectives in the field, including the police officers/detectives as well as in the staffing, administration and processing of persons suspected of violation of the criminal laws of the State of New York which allowed the shooting of the Plaintiff, which resulted in the serious and permanent physical injuries Plaintiff sustained.

96.    The Defendants CITY and NYPD, through their agents, servants, employees, including but not limited to the individual Defendants were negligent, reckless and careless in shooting the Plaintiff.

97.    The Defendants CITY and NYPD had prior knowledge of the inappropriate, unlawful, and improper conduct of the individual Defendants, and continued to employ them and allowed them to be in contact with the public at large.

## COUNT XI (Punitive Damages)

98.    Plaintiff repeats and realleges each and every allegation set forth in all preceding paragraphs with the same force and effect as if more fully set forth at length herein.

99.    The actions of all the Defendants herein above alleged were malicious, willful and grossly negligent.

100.    The Defendants CITY and NYPD authorized, permitted and ratified the unlawful and negligent acts of the individual Defendants.

101.    By reason of the foregoing, Plaintiff demands judgment for punitive damages against the Defendants CITY and NYPD, including, but not limited to the individual Defendants, in a sum exceeding the jurisdictional limits of all the lower courts.

102.    As a result of the forgoing, Plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and otherwise damaged and injured.

## COUNT XII (Intentional Infliction of Emotional Distress)

103.    Plaintiff repeats and realleges each and every allegation set forth in all preceding paragraphs with the same force and effect as if more fully set forth at length herein.

104.    As a result of the foregoing, the plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and otherwise damaged and injured.

## COUNT XIII (Prima Facie Tort)

105.    Plaintiff repeats and realleges each and every allegation set forth in all preceding paragraphs with the same force and effect as if more fully set forth at length herein.

106.    Defendants failed to adhere to proper police protocols prior to discharging their weapons.

107.    As a result of the foregoing, the plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and otherwise damaged and injured.

**WHEREFORE**, Plaintiff ELSWORTH GEORGE respectfully requests judgment upon all causes of action against Defendants as follows:

1.    With respect to Defendant CITY and Defendant NYPD:

    a.   Declaratory judgment declaring that Defendant CITY and Defendant NYPD has violated the aforesaid statutes and constitutions;

    b.   Restitution to Plaintiff of his rights, privileges, benefits and income which would have been received by him but for Defendants unlawful, wrongful, tortuous, and unconstitutional conduct;

    c.   Compensatory damages in an amount to be determined by the court and jury;

    d.   Punitive damages in an amount to be determined by the court and jury;

    e.   Reasonable attorney's fees, disbursements and costs of this action, pursuant to 42 U.S.C. § 1988;

    f.   All legal and statutory interest on sums awarded; and

    g.   Such other and further relief as this Honorable Court may deem just, proper and equitable.

2.    With respect to each of the individual Defendants:

    a.   Declaratory judgment declaring that the Defendants have violated the aforesaid statutes and constitutions;

    b.   Restitution to Plaintiff of his rights, privileges, benefits and income which would have been received by him but for each Defendants' unlawful, wrongful, tortuous, and unconstitutional conduct;

    c.   Compensatory damages in an amount to be determined by the court and jury;

39

d.  Punitive damages in an amount to be determined by the court and jury;

e.  Reasonable attorney's fees, disbursements and costs of this action, pursuant to 42 U.S.C. § 1988;

f.  All legal and statutory interest on sums awarded; and Such other and further relief as this Honorable Court may deem just, proper and equitable.

Dated:  Brooklyn, New York
        October 16, 2012

                    By:    Karen Gale O'Reilly-Medic, Esq.
                           BARON ASSOCIATES P.C.
                           Attorneys for Plaintiff
                           ELSWORTH GEORGE
                           2509 Avenue U
                           Brooklyn, New York 11229
                           (718) 934-6501
                           Our File No.: 8176

40

CLIENT'S VERIFICATION

STATE OF NEW YORK)
ss::
COUNTY OF KINGS  )

Elsworth George , being duly sworn, deposes and says that I am the plaintiff in the individual within action, that I have read the foregoing Summons & Verified Complaint and know the contents thereof; that the same is true to my knowledge, except as to the matters therein stated to the alleged on information and belief, and as to those matters, I believe them to be true. My belief as to those matters therein not stated upon knowledge is based upon facts, records, and other pertinent information contained in my personal files.

Brooklyn, New York
October 8, 2012

_____
Elsworth George

Sworn to before me this
8th day of Ocotber, 2012

ERIK M. TEJADA
Notary Public, State of New York
No. 01TE6231260
Qualified in Kings County
Commission Expires November 15, 2014